HENNEY v. NEW YORK CENT. & H. R. R. CO.

(District Court, S. D. New York. December 4, 1912.)

PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—OZONIZER.
    The finding of a jury that the Henney patent, No. 974,789, for an ozonizer, was valid and infringed, *held* sustained by the evidence.

At Law. Action by David S. Henney against the New York Central & Hudson River Railroad Company. On motion of defendant to set aside verdict and for a new trial. Motion sustained, subject to right of plaintiff to stipulate for a reduction of the verdict.

F. Warren Wright, of New York City (Fred Francis Weiss, of New York City, of counsel), for plaintiff.

John D. Morgan, of New York City, and Spencer Weart, of Jersey City, N. J., for defendant.

RAY, District Judge. The plaintiff is inventor and patentee of an alleged improved device for producing ozone from the atmosphere, and which device is known in the patent as an ozonizer. The application therefor was filed August 1, 1910, and the patent was issued November 8, 1910, No. 974,789. The defendant here, New York Central & Hudson River Railroad Company, has in use at its station in New York City a purification plant, and uses, it is claimed, 30 units or ozonizers, each of which infringes the plaintiff's patented

ozonizer. In the complaint the plaintiff alleged the use of one machine with 10 units, and laid his damages at $500. On the trial it appeared by concession that defendant used 30 units, but it did not concede all 30 were alike, and, under the circumstances, the plaintiff being ignorant until then of the number of units used by the defendant, the court permitted an amendment alleging the use of 30 infringing units and claiming $1,500 damages.

The defendant denied the validity of the patent, its position being that, in view of the prior art, no invention is disclosed, and also denied infringement, conceding the plaintiff's patent to be valid. A number of prior patents were put in evidence to show the prior art. I think the validity of the patent was a fair question of fact for the jury, and that, as there was a conflict of evidence, the verdict should not be disturbed on the ground that the validity of the patent was not proved. The question of infringement presents more difficulty, and defendant contends that on the uncontradicted evidence or testimony in the case it appears that one or more of the essential elements of the ozonizer of the patent in suit is wanting in the defendant's device or units, and that therefore the verdict is contrary to and unsupported by the evidence, and must be set aside.

Claim 3 of the patent in suit was the only one submitted to the consideration of the jury as infringed. The jury was told they must find every element of that claim, or its allowable equivalent, present in one or more of the units of defendant's apparatus, or the verdict must be for the defendant. The jury found infringement by the use of 30 units, and placed the damages at $1,500.

Claim 3 of the patent in suit to David S. Henney, for ozonizer, No. 974,789, reads as follows:

"The herein described apparatus for the production of ozone, comprising two similarly shaped open-end glass cylinders of different diameters, each cylinder provided with openings in its wall near one end, each cylinder provided with a layer of foil, one of said cylinders being of a less size than the other and occupying an inverted position with relation to the other, the smaller within the larger, means for closing one end of the device, means for admitting air to the other end of the device, and an electrode within the inner vessel."

This apparatus for the production of ozone has as its elements: (1) Two similarly shaped open-end glass cylinders of different diameters, each cylinder provided with openings in its wall near one end; (2) each cylinder provided with a layer of foil; (3) one of said cylinders being of less size than the other and occupying an inverted position with relation to the other, the smaller within the larger; (4) means for *closing one end* of the device; (5) means for admitting air to the *other end* of the device; and (6) an electrode within the inner vessel. "Inner vessel" means the smaller glass cylinder of the lesser diameter within the larger of the greater diameter.

It is, and on the trial was, perfectly plain that defendant used in its installation and apparatus for producing ozone two similarly shaped open-end glass cylinders of different diameters, each cylinder provided with openings in its wall near one end, and that one of said cylinders

was of less size than the other, and occupied an inverted position with relation to the other, the smaller within the larger, and that there was an electrode within the inner vessel, or cylinder. It was contended on the trial that the defendant's cylinders were not provided with a layer of foil, but covered with a sort of aluminum compound of ground or pulverized metal, not answering to the definition of "foil," and not coming within an allowable equivalent for "foil." The evidence pro and con may be said to conflict; but the question was submitted to the jury, and it found, and I think correctly, that defendant's cylinders were each provided with a layer of foil, or its allowable equivalent.

Defendant contends that its device or apparatus has no means for closing *one end* of the device with means for admitting air to the *other end* of the device; that air is admitted at one end of its device or glass cylinders, and passes directly through between the walls of the inner globe and those of the outer globe, and hence through the electrical or electrified zone, and thence, duly ozonized, directly out and on through a duct, in a base on which it is mounted, to the water to be purified, and with which it is mixed; that therefore one end is not closed and the other open for admitting air, but that in fact both ends are open, inasmuch as the air enters *at one end* and passes out *at the other end*. On the trial the defendant also contended that the use by it of glass cylinders each with openings in its walls near one end was unnecessary, and that such holes perform no function in its apparatus; that such cylinders with holes were used for the reason it could not procure cylinders without holes.

The defendant contends that this is not the mode of operation of the plaintiff's device or ozonizer; that in the apparatus of the patent the air is admitted at one end by means of a blower, and made to pass up through the interior of the inner or smaller glass cylinder to near its top end, which end is sealed or closed, and that the air is made to travel this course for the purpose of keeping the glass surfaces cool and avoid puncturing the walls; that the air then passes out through the holes in the walls of this inner or smaller cylinder near its upper end, into the space between the walls of the inner cylinder and the walls of the outer cylinder, but cannot escape from the apparatus at this end, opposite the end where it enters, as the upper end of the space between the two cylinders is closed or sealed; and that the air then passes down through the space measured by the walls of the two cylinders, and hence through the electrical or electrified zone, where it is ozonized, and thence out through the holes in the walls of the outer and larger cylinder.

The defendant claims that plaintiff's device, as described in claim 3, performs two functions: (1) That it keeps all surfaces cool by forcing the air before being ozonized to pass through the inner and smaller cylinder; and (2) that it then ozonizes the air by forcing it through the space bounded by the walls of the two cylinders, and that both are essential and the necessary result of plaintiff's combination, while defendant does not cool the surfaces, as it does not pass the air into and through the interior of the inner cylinder.

The specifications of the patent contain the following:

"An annular plug 27 closes the space between the two vessels at their top. The blower 5 directs air through the neck of the outer vessel, the air passing upwardly and through the holes 21 in the wall of such vessel, then down between the walls of the two vessels, and out the holes 18 at the base of the outer vessel. I am thus enabled to keep all surfaces cool by the air blast, thus securing ozone in the improved manner known to the art without danger of puncturing the walls."

This is a misdescription of the operation of the device shown in Figs. 1 and 3 of the drawings, as the holes 21 are in the walls of the inner cylinder or vessel. By vessel the patentee means cylinder, for he says, "An annular plug 27 closes the space between the two vessels," and these vessels are the two cylinders. As shown in Fig. 1, he does, by means of the blower, direct the air through the neck of the outer vessel, and into the interior of the inner vessel or cylinder, and then up through *its* interior to the holes in *its* walls near the top, and out of such holes into the outer cylinder or vessel. What the language quoted means is that "the blower 5 directs air through the neck of the outer vessel" into the inner vessel, the air passing upwardly through the interior of the inner vessel and out through the holes 21 in the walls of such vessel (the inner cylinder). The holes 18 shown in Fig. 1 of the drawings of the patent are in or near the lower end of the outer vessel or cylinder, and are the holes for the escape of the ozonized air. The specifications also say:

"One of the cylinders is smaller than the other, and shorter, and is inserted in reverse position into the larger; the end being plugged to prevent egress of air."

That is, the upper end of the smaller cylinder is plugged to prevent the egress of air. If this were not so, the air forced in at the bottom would pass directly through and out of the smaller cylinder, and would not pass through the electrified zone at all.

It is necessary to see just what the defendant's construction is and what it does. The construction varies from that of plaintiff's described and illustrated ozonizer. First, the air is drawn in and out after being ozonized by an ejector, and is not forced in and out by a blast. In my judgment, the one method is the well-known equivalent of the other. Next, the air is drawn in at the top of the device; the inner cylinder being shorter than the other, and its top edges are about on a level with the center of the openings in the outer cylinder near its top. The inner cylinder is plugged or sealed near the bottom, but just above the holes therein. The outer cylinder fits into and sets in a base when in operation, which substantially closes the bottom of the outer and larger cylinder. It is seen that there is free entrance of the air into the inner cylinder or vessel from the top; but it cannot pass entirely through, and, as there is a constant downward suction above, if the electricity heats the cylinder, the heated air within the inner cylinder will rise and give place to the cooler air. Hence the surface of the walls of the inner cylinder is kept reasonably cool. The air from above is drawn into the space between the wall of the inner cylinder or vessel and that of the outer cylinder or vessel,

not only from the top, but through the openings in the wall of the outer cylinder near the top, and down in the space between the two walls through the electrical or electrified zone, and there ozonized, and thence on and downwardly until it reaches the holes in the wall of the inner cylinder or vessel, and then this ozonized air is drawn through those holes into the interior of the inner cylinder or vessel (it cannot escape upwardly as the inner cylinder or vessel is plugged or sealed just above those holes), and then on downwardly into the duct in the base, and then on to the water with which it is mingled.

It is evident that the openings in the walls of the two cylinders do perform a function, and practically the same function performed by those in the plaintiff's device. The operation is simply reversed. In plaintiff's device the air comes into the space between the walls of the two cylinders, where it is ozonized, through the openings in the walls of the *inner* cylinder or vessel, and, after being ozonized, passes out through the openings in the walls of the *outer* cylinder; while in defendant's device the air comes into the space between the walls of the two cylinders, where it is ozonized, mainly through the openings in the walls of the *outer* cylinder or vessel near its top, and after being ozonized passes out through the openings in the wall of the inner cylinder. It may be that the cooling of the surface of the inner cylinder is not as great in the defendant's device as in plaintiff's, but practically it is sufficient. And, so far as operation and practical results are concerned it is immaterial whether the air travels the road found in the one device or that found in the other. The one is the equivalent of the other. It is a mere change of form of construction, so that the air travels one road to reach the electrical field in one apparatus and a different road in the other, and one road after passing that field in the one apparatus and another road in part in the other, without at all affecting the mode of operation of the electrical currents on the air or the result. To my mind the defendant's device is a plain infringement of claim 3 of plaintiff's patent. It was not contradicted that the special office and advantage of the openings in these cylinders or vessels is to cause a uniform flow of air in the entire circle surrounded by the electrodes and both in and out.

Some of the evidence given by one or two of defendant's experts would create the impression that the air enters at the top of the device and passes downward between the two electrodes, the electrical or electrified field, and then on down and out of and clear of the ozonizer without entering the interior of the inner cylinder at all; but the exhibits in evidence showed that this is not true, except as to some of the units, and Dr. Fowler, defendant's witness, said:

"Q. So that the air in the inner tubes up at the Grand Central comes in the holes at the top, descends between the two electrodes, then goes through the holes in the wall of the inner tube, and then out through the inner tube; is that so? A. Not in all of the tubes; no. Q. Is it true of this tube? A. Yes; of that special tube."

This tube referred to was the alleged infringing tube, like a number of those in the defendant's installation.

The cross-examination of Dr. Fowler demonstrated beyond all question that the plug is put on the interior of the inner cylinder to prevent

the air from passing clear through it, and so it would be drawn through the electrical or electrified field between the walls of the inner and the outer cylinder; that this plug was above the series of holes in the wall of the inner cylinder; that the space between the inner cylinder and the outer cylinder at the bottom is effectually closed or sealed, so that air entering at the upper open end cannot pass clear through and into the duct, but must turn aside and enter the interior of the inner cylinder through the series of holes in its walls near its lower end (when in position) and below the plug in such inner cylinder, and pass thence downward in the inner cylinder into the duct, to be conveyed thereby to and into the water. This is not true of all the units in defendant's installation, but of some of them. It is evident that practically and when in operation defendant's device has and uses means for closing one end of the device; the other end being open for the ingress of air.

No one would suppose or understand that plaintiff's ozonizer or device is to have an opening at one end for the ingress of air, and no other opening for the egress of the ozonized air. While he has described a device in which the extreme lower end is open for the ingress of air into the inner cylinder through the mouth of the outer cylinder (the entrance of air into the outer cylinder at the lower end being prevented), and in which the extreme ends of both cylinders are sealed or closed at the other or upper end, thus closing the upper end of the device, and in which device the air is forced in and compelled to pass through the openings in the wall of the inner cylinder near one end (the upper end as shown), and into the interior of the outer cylinder, and then down between the walls of the two cylinders to the openings in the walls of the outer cylinder near one end (the lower end as shown), and then out through such openings, the lower end of such space between the two walls being closed as it is in defendant's device, although the actual means for making such closure are different, he has not confined himself to such a structure. He has shown and described one mode of and means for carrying out his invention and making it practical. He was not obligated to describe and illustrate every means.

It ought to be observed that in defendant's device it cannot be that there is a "dead calm" in the interior of the inner cylinder when the device is in operation. If the electricity heats the walls of the inner cylinder, as no doubt it does, the two heat the air within that cylinder, and no amount of expert evidence can satisfy me, and it failed to satisfy the jury, that heated air in an open vessel will not rise, if surrounded with cooler air, and give place to the cooler air, and thus create a current. In this case the defendant purposely places the open mouth of his inner cylinder below the open mouth of the outer cylinder and partially below the openings in the walls of the outer cylinder. The air is then drawn in and down more or less onto the air in the inner cylinder, which is more or less heated. No expert evidence can convince this court that, if you force cold air into the open mouth of a vessel filled with hot air, there will be a "dead calm" within such vessel. Cold water poured, however gently, on the open top of hot water in a kettle, will create a commotion within the kettle,

and, if continued, will cool both the hot water and kettle, and cause an overflow of the contents.

The inferiority of defendant's device, if it be inferior, for cooling surfaces, does not avoid infringement. But do we have means for closing one end of the device when in use? Concededly the upper end of defendant's units, both cylinders, are open. It has two cylinders, the one within the other. The inner cylinder is plugged or closed, but some distance above the openings therein near its lower end. Air admitted at the upper end cannot be forced through it. For the passage and escape of air (before being ozonized) it is closed at one end. The other or outer cylinder, when the device is in operation, is also closed at its lower end in some of the units. The air, before being ozonized, cannot pass through it from end to end. Hence, in the sense of the patent as to closure at one end of the device, the defendant's units have means for closing one end of the device and means for admitting air to the other end. The function of the device is to ozonize air, and discharge it.

On the part of the plaintiff it was testified that his invention resides in the series of holes or openings in the glass cylinders near the ends thereof, respectively, one series near one end of the device, and the other series near the other end, so the air will travel in six different currents, both coming in and going out. The defendant has and uses several such ozonizers in its installation. There is nothing like this device in the prior art, and it is evident, I think, that the makers of defendant's installation followed and copied Henney with such changes as it was thought would avoid infringement. I do not think they were successful.

Coming to damages, I am of the opinion, on reading the evidence of Henney, that he figured at the trial on 30 infringing units repeatedly when he placed the damages at over $750, but he did not state how much over. At no time did he in his final result place the damages at $500 for 10 units, or at $750 or over for 10 units. On the proof the damages are excessive, and must be reduced to $750. If plaintiff stipulates to reduce the damages to $750, the motion to set aside the verdict and for a new trial is denied; otherwise, granted on the sole ground the damages on the evidence are excessive.

So ordered.